UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
NADINE MIRANDA,

                Plaintiff

    v.

KINGS PHYSICIAN SERVICES, P.C. D/B/A
NEWYORK-PRESBYTERIAN MEDICAL GROUP
BROOKLYN and NEW YORK PRESBYTERIAN
BROOKLYN METHODIST HOSPITAL

                Defendants.
-------------------------------------------------------------------X

**COMPLAINT**
Civil Docket
25-cv4106

PLAINTIFF DEMANDS A TRIAL BY JURY

Plaintiff NADINE MIRANDA, (Hereinafter also referred to as "Plaintiff") by and through his undersigned attorneys, files this Complaint, against Defendant, KINGS PHYSICIAN SERVICES, P.C. D/B/A NEWYORK-PRESBYTERIAN MEDICAL GROUP BROOKLYN and NEW YORK PRESBYTERIAN BROOKLYN METHODIST HOSPITAL (herein after jointly referred to as "Defendants").

## INTRODUCTION

1. Plaintiff brings this action charging that the Defendants violated Plaintiff's rights under the Family Medical Leave Act ["FMLA"], and the New York City Human Rights Law, Labor Law Section 740 to recover lost wages, and an additional amount as liquidated damages, punitive damages, emotional distress and reasonable attorneys' fees and costs.

## JURISDICTION

2. Jurisdiction of this action is conferred upon the court as this action involves a Federal Question under the FMLA. The Court also has jurisdiction pursuant to 42 U.S.C. §12101

<blockquote>et. Seq.; 29 U.S.C. §2617; 28 U.S.C. §1331, §1343 and pendent jurisdiction thereto. This action involves questions of federal law.</blockquote>

3. Venue is proper in this district based upon Defendants' residency and principal place of business within the County of Kings, State of New York, within the Southern District of New York. 28 U.S.C. §1391(b).

4. The Court has supplemental jurisdiction pursuant to 28 U.S. Code § 1367 - Supplemental jurisdiction

## PARTIES

5. That at all times relevant hereto, Plaintiff is a resident of the State of New York, County of Kings.

6. That at all times relevant hereto, the Defendant KINGS PHYSICIAN SERVICES, P.C. D/B/A NEWYORK-PRESBYTERIAN MEDICAL GROUP BROOKLYN, (Hereinafter referred to as "KPS") is a domestic corporation authorized to conduct business in the State of New York

7. Defendant "KPS" is a professional corporation incorporated in the state of New York with its principal place of business in Brooklyn, New York.

8. Defendant New York Presbyterian Brooklyn Methodist Hospital (Hereinafter referred to as ""  NYPB" is a not-for-profit hospital, incorporated in the state of New York with its principal place of business in Brooklyn, New York.

9. Defendants was plaintiff's employer within the meaning of the FMLA, and New York Administrtative Code and New York Labor law.

10. That at all times relevant hereto, the Defendant "KPS" has an office located at 38 6th Ave Brooklyn, NY 11217.

11. That at all times relevant hereto, Plaintiff was an employee of Defendant "KPS.'

12. That at all times relevant hereto, the Defendant "NYPB" has an office located at 38 6th Ave Brooklyn, NY 11217.

13. That at all times relevant hereto, Plaintiff was an employee of Defendant "NYPB.'

14. Upon information and belief, both defendants employ more than 75 (seventy-five) employees within 75 miles radius.

15. Defendant "KPC" is a captive corporation of "NYPB" with its principal place of business located in Brooklyn, New York.

16. Defendant "NYPB" has its principal place of business located in Brooklyn, New York.

17. Defendant "KPS" had authority to supervise Plaintiff through its employees and agents.

18. Defendant "KPS" had authority to demote or promote Plaintiff through its employees and agents.

19. Defendant "KPS" had authority to hire and or fire Plaintiff through its employees and agents.

20. Defendant "KPS" had authority to determine Plaintiff' pay rate.

21. Defendant "NYPB" had authority to supervise Plaintiff through its employees and agents.

22. Defendant "NYPB" had authority to demote or promote Plaintiff through its employees and agents.

23. Defendant "NYPB" had authority to hire and or fire Plaintiff through its employees and agents.

24. Defendant "NYBP" had authority to determine Plaintiff' pay rate.

25. Eileen Connelly, Director of Operations was and still is an employee of the defendant.

26. Eileen Connelly had authority to supervise Plaintiff.

27. Eileen Connelly had authority to demote or promote Plaintiff

28. Eileen Connelly had authority to hire and or fire Plaintiff

29. Eileen Connelly had authority to determine Plaintiff' pay rate.

30. Sabrina Raghunandan, Regional Director of Operations was and still an employee of the Defendant "KPS."

31. Sabrina Raghunandan had authority to supervise Plaintiff.

32. Sabrina Raghunandan had authority to demote or promote Plaintiff

33. Sabrina Raghunandan had authority to hire and or fire Plaintiff

34. Sabrina Raghunandan had authority to determine Plaintiff' pay rate.

35. Emily Lozano- HR business partner was an employee of the defendant "KPS."

36. Shanaiya Wiggins-HR Business partner was and still an employee of the defendant "KPS."

## MATERIAL FACTS

37. On or about April 18, 2018, Plaintiff began his employment with "KPS" as a practice manager.

38. On or about April 18, 2018, Plaintiff began his employment with "NYPB" as a practice manager.

39. Plaintiff worked at the defendants' branch located at 38 6th Ave Brooklyn, NY 11217.

40. Plaintiff's salary was approximately $113,850.00 (one hundred and ten thousand dollars) annually.

41. Plaintiff qualified for the position.

42. Plaintiff was and still is a mother.

43. Plaintiff was a full-time employee.

44. Plaintiff's father was diagnosed with stage IV cancer.

45. Plaintiff was and still is the caregiver of her father.

46. Plaintiff is a disabled individual suffering from "anxiety" and "depression" as defined under New York City Administrative Code.

47. Under the New York City Administrative Code, "disability" is broadly defined as any physical, medical, mental, or psychological impairment, or a history or record of such an impairment. This definition encompasses impairments to various bodily systems, including the neurological, musculoskeletal, sensory, respiratory, cardiovascular, and other systems, as well as mental or psychological impairments.

48. Plaintiff was able to comply with the essential functions of her job with reasonable accommodation.

49. In or about the fall of 2023, Plaintiff reported theft of office and medical supplies and time fraud by two employees to the Human Resources department.

50. In or around October of 2024, Plaintiff reported fraudulent use of a doctor's letterhead by the same two employees to obtain government assistance (food stamps) fraudulently. Plaintiff reported this incident to her director Michael Ryan as well as Eileen Connelly and Sabrina Raghunandan. Plaintiff's supervisors, Eileen Connelly and Sabrina Raghunandan, expressed displeasure with Plaintiff's reporting of these incidents.

51. The two employees involved in the misconduct were eventually terminated.

52. Starting from October of 2024 until Plaintiff's termination, in retaliation of Plaintiff complaining about the two employees defrauding the government, Eileen Connelly, who was promoted director of operations position, assigned additional responsibilities

        overseeing three floors in the building and two sessional sites without additional compensation.

53. In or around October 2024, a new manager, Shaquille Martin, was hired, but Plaintiff was multiple floors and locations requiring Plaintiff to work beyond her scheduled work hours.

54. In or around October of 2024 Plaintiff advised Eileen Connelly and Sabrina Raghunandan, the regional director of operations that Plaintiff was the caregiver of her father, who was suffering from stage IV cancer as well as the sole caregiver of her mother who was ailing due to aging and that Plaintiff could not stay late hours requesting her workload to be reduced.

55. Starting from October of 2024 until Plaintiff's termination, defendant Eileen Connelly and Sabrina Raghunandan-refused to reduce Plaintiff's workload and in fact increased Plaintiff's workload to prevent Plaintiff from assisting his father.

56. Starting from October of 2024 until her termination, Plaintiff experienced an excessive workload, micromanagement, and was frequently required to work late hours.

57. Starting from October 2024, until Plaintiff' termination defendant Eileen Connelly and Sabrina Raghunandan-purposefully scheduled meetings at 5:00PM and after to prevent Plaintiff from taking care of her terminally ill father and mother.  More particularly, defendants required Plaintiff to assume other full time job roles such as surgical scheduler and asked Plaintiff to manage the calls like a call center manager 7/24. None of the other managers within the group were made to do these additional duties but Plaintiff.

58. In or around February of 2025, Plaintiff received her annual review which was "meets expectations." Plaintiff provided proof that she exceeded expectations. However, Plaintiff's director, Eileen Connelly, stated that she could not give Plaintiff an "exceeds expectations"

rating because Plaintiff involved HR in matters that made them "look bad" referring to the fact that Plaintiff complained about two employees who were defrauding the government as well as referring to the fact that Plaintiff needed accommodations to take care of her parents. Plaintiff stated that she felt like she was being retaliated because she complaint about fraud and she requested accommodations to take care of her parents. Plaintiff's director gave Plaintiff a raise increasing Plaintiff's salary from $107.000.00 to $113,850.00. Plaintiff said thank you adding that Plaintiff will still make a complaint to Human Resources department.

59. In or around March of 2025, Plaintiff was approved from April 10, 2025, through April 18, 2025, by defendants to take care of her father.

60. Starting from February of 2025 until Plaintiff's termination Eileen Connelly provoked Plaintiff's co-workers against Plaintiff creating a hostile and combative work environment in further retaliation of the Plaintiff's complaints. As a result, Plaintiff had a panic attack and had to leave the work early on April 8, 2025, and had to take the day off on April 9, 2025.

61. On or about April 8, 2025, during a zoom meeting Shanaiya Wiggins questioned Plaintiff about if Plaintiff ever spoke ill of Eileen or leadership to any of the employees and asked if Plaintiff had an open-door policy for employees. Plaintiff stated that she (Plaintiff) felt targeted and harassed because Plaintiff requested accommodation to assist Plaintiff's sick and aging parents as well as the prior complaints Plaintiff made. Shanaiya Wiggins suggested that Plaintiff go home and rest and let Plaintiff leave early for the day and that they would chat when Plaintiff came in later.

62. Starting from January of 2025 until Plaintiff's termination several times a month Plaintiff told Eileen Connelly that Plaintiff was suffering from anxiety and depression and that

Plaintiff wanted to be transferred to another department, but Plaintiff's complaints fell on deaf ears.

63. On or about April 10, 2025, due to the panic attacks and Plaintiff's father's worsening medical condition, Plaintiff requested FMLA leave.

64. On or about April 14, 2024, Plaintiff received the following email from the defendant "Dear Ms. Miranda, As you are aware, a recent HR investigation was conducted following concerns regarding unprofessional conduct in your leadership. Based on the findings of the investigation, it has been determined that several instances of unprofessional behavior occurred which violated Medical Group policy and caused the organization to lose faith in you as a leader. As a result, the decision has been made to terminate your employment."

65. On or about April 18, 2025 Plaintiff received the following letter from the defendant "On 4/10/2025, you requested time away from work starting 4/21/2025. Your New York Disability Benefit Leave benefits are approved from 4/21/2025 through 5/20/2025. Your claim number is 50695038."

66. Plaintiff suffers from anxiety and depression and is responsible for caring for parents with serious health issues.

67. Eileen Connelly was aware of Plaintiff's mental health conditions and family care responsibilities.

68. Plaintiff was subjected to different treatment compared to other managers, including stricter enforcement of rules and policies.

69. Plaintiff was wrongfully terminated from employment.

70. Defendants retaliated against Plaintiff for taking protected FMLA leave.

71. Defendants failed to accommodate Plaintiff's FMLA leave request.

72. Defendant retaliated against Plaintiff because Plaintiff complained about caregiver discrimination.

73. Defendants failed to accommodate Plaintiff concerning Plaintiff's caregiver obligations.

74. Defendants discriminated against Plaintiff because of Plaintiff's disability.

75. Defendants failed to accommodate Plaintiff's disability and increased Plaintiff's workload in retaliation of Plaintiff's complaints.

76. Defendants retaliated against Plaintiff because Plaintiff complained to HR concerning two employees stealing time and defrauding the government.

77. Defendants terminated Plaintiff from his position approximately few days after Plaintiff requested FMLA leave.

78. Plaintiff's work performance was above average.

79. Defendants exhibited a pattern and practice of FMLA, Caregiver discrimination and retaliation based on Labor Law Section 740.

80. Defendants' actions were intentional and intended to harm Plaintiff

81. After Plaintiff protested to Defendants, Plaintiff became the subject of discriminatory retaliation by Defendants.

82. As a result of Defendants' actions, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

83. Defendants' discriminatory comments and actions created a hostile working environment, which no reasonable person would tolerate.

84. As a result of the Defendants' discriminatory and intolerable treatment of Plaintiff, Plaintiff suffered severe emotional distress and physical ailments.

85. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

86. As a result of the above Plaintiff has been damaged in an amount in excess of the jurisdiction of all lower courts.

87. As Defendants' conduct has been willful, outrageous, malicious, Plaintiff also demands punitive damages against Defendants.

88. Defendants failed to take appropriate action regarding the unlawful conduct mentioned herein.

**AS A FIRST CAUSE OF ACTION**
<u>**FOR VIOLATION OF THE FAMILY MEDICAL LEAVE ACT**</u>

89. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

90. § 2612 of the FMLA states in pertinent part:

91. (a) In general

    (1) (1) Entitlement to leave

        i. Subject to section 2613 of this title, an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period for one or more of the following:

        ii. (A) Because of the birth of a son or daughter of the employee and in order to care for such son or daughter.

        iii. (B) Because of the placement of a son or daughter with the employee for adoption or foster care.

    iv. (C) In order to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition.

    v. (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee.

92. Defendants violated Plaintiff's FMLA rights by failing to provide her with appropriate leave thereunder.

## AS A SECOND CAUSE OF ACTION
## RETALIATION & INTERFERENCE UNDER THE
## FAMILY AND MEDICAL LEAVE ACT - 29 U.S.C. § 2601 *ET SEQ*.

93. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

94. § 2615 of the Act states as follows:

    Prohibited acts

    (a) Interference with rights

        (1) Exercise of rights: It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

        (2) Discrimination: It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

95. Defendants "KPS" and "NYPB" interfered with Plaintiff's rights under the above section and discriminated against Plaintiff and discharged Plaintiff from his employment for opposing Defendants' unlawful employment practice and for exercising her rights.

## AS A THIRD CAUSE OF ACTION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

96. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

97. The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, caregiver status, marital status, religion, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

98. Defendants "KPS" and "NYBP" engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff because of. Plaintiff's caregiver status and disability.

### AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

99. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

100. The New York City Administrative Code Title 8, §8-107(7)) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . . "

101. Defendant "KPS" and "NYPB" engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(7) by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer and/or because of Plaintiff requested leave due to her caregiver status and disability pursuant to NY § 8-107 [1]

102. All defendants violated the above sections.

## AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

103. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

104. Section 8-107(13) entitled Employer liability for discriminatory conduct by employee, agent or independent contractor. Provides a. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section. b. An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where: the employee or agent exercised managerial or supervisory responsibility; or the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or the employer should have known of

the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

105. Defendant "KPS" and "NYPB" violated the above section as set forth herein.

## AS A SIXTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

106. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this   complaint.

107. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

108. In the event Court finds that any of the defendants "KPS" and or "NYBP" are not liable under Plaintiff's cause of actions referenced above for direct discrimination, then Plaintiff in the alternative claims that Defendants "KPS" and "NYBP" engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling, condoning and coercing the above discriminatory, unlawful and retaliatory conduct.

109. Defendants "LIU", "VT" "MWS" violated this section.

## AS A SEVENTH CAUSE OF ACTION UNDER NEW YORK LABOR LAW SECTION 740

110. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

111. The amended Labor Law Section 740 partially indicates as follows: "2. Prohibitions. An employer shall not take any retaliatory personnel action against an employee because such employee does any of the following: (a) discloses, or threatens to disclose to a supervisor or to a

public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation or that the employee reasonably believes poses a substantial and specific danger to the public health or safety;....;

112. Defendants violated this section by terminating Plaintiff from his position after Plaintiff complained of fraudulent time sheets and fraudulent doctor's letter and fraudulent food stamp applications. .

113. The defendants violated this section.

## INJURY AND DAMAGES

61.     As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of a career and the loss of a salary, health insurance costs, medical bills, bonuses, benefits and other compensation which such employment entails, out-of-pocket medical expenses and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering, inconvenience, injury to his reputation, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

## JURY DEMAND

Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff respectfully requests a judgment against the Defendants:

A.      Declaring that the Defendants engaged in unlawful employment practice prohibited by the FMLA, and the New York City Human Right Law, New York Labor Lawand that the Defendants unlawfully, discharged, and retaliated against Plaintiff.

B. Awarding damages to the Plaintiff, retroactive to the date of his discharge and prior, for all lost wages (past and future) and benefits resulting from Defendants' unlawful employment practices and to otherwise make his whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

D. Awarding Plaintiff punitive and statutory damages;

E. Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of the action;

F. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendant's unlawful employment practices.

Dated: New York, New York
July 25, 2025

**SEKENDIZ LAW FIRM P.C.**

By __/s/Ismail Sekendiz_____
Ismail Sekendiz , IS0509
Attorneys for Plaintiff 45
Broadway Suite: 1420
New York, NY 10006
Tel. (212) 380-8087